Our next case is Centripetal Networks v. Palo Alto Networks, 23-16-54. Mr. Hanna. Yes. Good morning. Good morning. Good morning, Your Honors. May it please the Court. The Board's decision in this case should be reversed, or at the very least remanded, because the Board failed to construe a key term that was in dispute. Was it in dispute? It was absolutely in dispute, Your Honor. And this was acknowledged in the Board's decision in Appendix 29-32. And that's for the 028 patent. And this term was absolutely in dispute because... Did you see the construction of it? Absolutely. We put our construction into it, into our SIR reply, into our patent under response, and to our SIR reply. And we specifically said that the actions that follow in the claims are going to be triggered based on the network threat indicators. And the Board did not construe this term. Where can we see your construction and understand that it was proposed as a construction? I would say it was in our patent under response. Do you have a page? If you don't mind, I'll get the page for the actual construction. But this is acknowledged in the Board's decision. If we look at the Appendix 29-32, the Board specifically stated on page 30 that we disputed what the response to a determination limitation meant. And then what the Board said, and I quote at Appendix 18, it said, to the extent interpretation of this term is necessary, we consider the meaning of the claim language in the context of determining whether the prior art teaches or suggests a limitation at issue. I think that quote answers your question, Judge Stark, that it was absolutely in dispute that there was a construction at issue here because the Board went through this entire analysis. So what is your position about what this claim language? First of all, which particular claim language responsive to determination by the filtering device satisfying a filter rule based on one or more network indicators? Correct. The next actions, the applying then has to itself be based on the threat indicator. Exactly, and the communicating. If I say something is based on variable X and variable Y, why wouldn't it be right to say that my decision is based on X? Not only X, but based on X. And isn't that what's going on in the, what's it? Source fire. Source fire. It's relying on something in the heading and also something else, but it is relying on the something in the heading. Well, the heading, and you have to be careful about this, the heading is only to determine whether the packets at issue should be analyzed at all. It has nothing to do about the conditions or also called the arguments that are going to actually trigger an action. And that's laid out in Appendix 2040, where it specifically details what the rule header is. Now, using your example, nothing would happen in source fire if there are not conditions and arguments that are actually in the rule to be applied. That's what you have to do. If you look at the evidence, what does source fire say? It says as a threshold in order to say, okay, if I'm going to narrow packets to be analyzed, I'm going to look in the rule headers. But that doesn't trigger any rules. The rules that are triggered are based on the arguments and conditions, and that's why construction is necessary. And explicit construction is necessary here, because based on how the board is going to interpret that claim, you're going to see in source fire that if the board says, okay, you can have conditions that can trigger these actions of communicate or applying an operator, right? If those conditions and arguments are not in source fire, nothing is going to happen at all. So if they try to interpret it that way, then it's not going to read on it. If they say it does require this, it does require this to trigger these actual operations, then again, it's not going to read on the prior art, because those actions aren't going to happen. So that's why we need explicit construction. The language that they use that they're going to interpret this in light of the prior art runs afoul all of this court's precedent, saying that you need an explicit construction before you analyze the prior art. Let's assume for the sake of argument we agree with that. Why shouldn't we just do the construction ourselves? You can do the construction yourselves, absolutely. And I think that if you do do the construction yourselves and you look at the evidence, that would warrant a reversal. You mean look at the intrinsic evidence related to the patent is what you're talking about. Right. If we look at the intrinsic evidence and how this operates, how the device that's in the 028 and the 126, how it operates, when it says based on the network threat indicators, what happens in that instance is that you have these reports, network threat intelligence reports, that give these network threat indicators. And the device will, based on those threat indicators, perform these actions. It does not talk about performing additional actions that are going to later trigger some other type of mechanism. And so that's what you're going to see based on the intrinsic record. So our position is that it can be reversed, but at the very least remanded to provide an explicit construction. And that's the purpose of getting a construction is so that we have notice and we can argue it, Centripetal can, but your honors can. Your honors can look to see is this construction correct on appeal. At this point, you don't know. We don't know what the board's construction is for this term. It was argued extensively during the oral hearing. It was acknowledged in the final written decision as being one of the major issues. And rather than apply this explicit construction for both of the cases, the 028 patent, the 028 patent and the 126 patent, referring to the patents rather than IPR numbers, which is easier for me, but they sidestepped it. In Appendix 61, they even said this, we acknowledge the effect of the responsive to language in the challenge claims, but we'll consider whether the grounds of unpatentability satisfy that requirement below. They, again, sidestepped the issue completely. I'm glad you brought up that quote. Do you know what that means? No. Okay. I have no idea what that means. That's exactly the point. It's like I don't know what that means at all. And that's in Appendix 61. And so when we look at this and we look at the issues, we actually see that because we don't have a construction, there's an actual inherent inconsistency between the 028 and the 126. In the 126, the board used this reasoning, saying that the comprising language essentially allows additional conditions to be able to be met in order to satisfy the applying and the communicating limitations. The 028 patent takes a completely different approach. They don't mention the comprising language at all. And so we have this inconsistent reasoning, inconsistent positions between the two patents that we cannot resolve without an explicit construction. And so, I mean, again, we could reverse if your honors come up with a construction, but I think at the very least you need to get remanded. And the additional inconsistencies come, and this is on Appendix 32. So this is, again, for the 126 patent and not for the 028. But there they suggest that the claim language only requires the rule to be satisfied in order to make the determination without the network threat indicators. Again, it's an inconsistent decision between the two decisions, that they're using additional criteria, interpreting the claim in different ways. And without explicit construction in both of them, we have an issue, and that needs to be resolved. I'm hoping when you come back, you'll show us where you set out your construction for the board. But in the absence of that, the red brief at 46 says, I think, what the petitioner thinks your construction was. It's a paragraph that starts third. They say that Centrepital suggests or implies that the response to limitation requires that rules must trigger based only on network threat indicators and not network threat indicators plus other criteria, which I think is what Judge Toronto was getting at with his question to you earlier. Is that a fair recitation of the construction that you proposed and would potentially have us say is correct? Yeah, I would say it. I'm sorry, what page was that? I'm sorry, page 46 of the red brief. I'm sorry if I wasn't clear. Oh, the brief at the base of the appendix, I'm sorry. No, it was the brief trying to infer what your construction is. So red at 46. So I think that that is largely correct, but I think the key is that the trigger, so let me, I think it's largely correct. I think that the way that the claim is written, it says response to a determination that a rule is satisfied based on network threat indicators, and then you have to do these two operations. So I do think that in order for those operations to happen, they have to be triggered based on the network threat indicators. And only the network threat indicators. Only the network threat indicators in the fact that you can't have additional application of a rule or some intervening criteria that's actually going to do the triggering, if that makes sense. So I take it that when you say we are free to de novo, do the construction ourselves, what we would be asking ourselves is whether or not to limit the term to the trigger based only on the network threat indicators, or alternatively be based, triggered on network threat indicators plus other criteria. That would be the claim construction dispute in front of us. Fair? I think it's mostly there. My only concern with that is that when you're saying it's only triggered on the network threat, the only trigger on the network threat indicators, I want to make clear that the network threat indicators are going to be what has to trigger the operations, if that makes sense. So then you can't have additional criteria that's going to be used to trigger. It has to be based on those network threat indicators. I think that might be what you're saying, but I just want to, in my mind, make clear that that's what the based on is for. It's that you have to have these network threat indicators, and then based on that, you're going to have these operations occur. And that's what the claim says, and that's what the intrinsic record would support. Counsel, you're into your rebuttal time. Okay. Thank you. I'll reserve the rest. Mr. Hallward-Greenmeier. May it please the Court. The claim construction that Centripetal asked for was with respect to the phrase responsive to. And they argued that responsive to meant in reaction to. The Board, as this Court has said, didn't need to resolve any claim construction dispute other than as necessary to resolve this case. And on page 32, they specifically addressed this argument, saying that the claim language is drafted that in response to is tied to a determination that the rule has been satisfied. In reaction to the fact that the rule has been satisfied, there is no intermediate step. There's no intervening action by the user or anything else. It's direct that as soon as it's a determination that the rule has been satisfied, in response to that, the operation occurs. What counsel wants to argue now is that related to means related only to. Now, that argument was never made in their patent owner response. Now, in the- He said related to. Did you mean responsive to? No. No, related to. So then following on, the claims say that the rule must- I said related to. I'm sorry. Based on. Based solely on.  I apologize. So responsive to is drafted as responsive to a determination that the rule has been satisfied. The rule is satisfied based on the network threat indicator. But in your view, and I think the board's view, not based only on that. Not based only on. So it can be an and operator. Yes. X and Y and the X. Exactly. This is a really bad source, but we want to know something else. Right. And, of course, on that point, Centripetal never argued that based on meant based only on. Now, in the 076, the board sort of surmised that and addressed it on page 879, saying that that's also not what it says. It says based on. It doesn't say based solely on. And they, in that context, relied on the comprising language of the preamble as suggesting that what is recited as based on the network threat indicators would not exclude also other steps, such as a determination that a second criteria was also met. So the board addressed the claim construction arguments that Centripetal argued and rejected them as inconsistent with the claim language. Now, what is really in dispute here is what does SourceFire teach? Because counsel asserted that it was somehow uncontested, although it is definitely contested, that SourceFire treats the rule header only as restricting which packets we're going to investigate further. But the board rejected that construction of SourceFire, just as this court rejected that construction of SourceFire in the appeal from the 722 patent. And this is at A6883, where it affirms that the board reasonably rejected the contention that SourceFire treated the rule header merely as a restrictive feature. And there is absolutely substantial evidence to support the board's determination that the rule header is part of the rule. The board found on page 31, A31, the rule includes conditions in both its header and options, and further that a packet must match all conditions in a rule to trigger the rule and then perform. Now that's supported at A76, which says that if the packet data matches all of the conditions specified in a rule, the rule triggers. And also at A762, where specifically SourceFire says that the components, including the rule header and rule options, make up a standard rule. So the rule includes both the header and options. Now the court went, the board rather, went further to find in the alternative that there is no requirement that a rule include options. As the word indicates, options are optional. And that's what Dr. Lee testified to in his deposition. And the board says this twice on page 32. Indicates that a rule is triggered when a packet matches source and destination IP addresses. Those are the network threat indicators in the rule header. And then it says parens and any criteria in the rule options section, indicating that there need not be. There may be some, if there are any. And then further down on page 32, when in describing how SourceFire operates, it says when a SourceFire rule contains conditions in addition to IP addresses in the rule header, the operator is applied when the packet matches all the conditions. Again, when it does so, indicating it's understood, as Dr. Lee testified, that it doesn't have to. Help me understand this. Is what you are saying right now, that even on Centripetal's view, that based on means, based only on SureFire, teaches that, because sometimes there won't be other conditions? That's right. That's right. Did the board conclude that? Yes, that's on page 32, where they're describing that, where they describe the options in optional language, saying any condition in the options section, or when, in addition to the IP address, which is in the rule header, it contains additional criteria. Those are findings that, in SourceFire, those are optional. I'm sorry, are you referring to the top of page A32? It's on the top of page 32, when it describes how a rule is triggered. Go ahead. Because a rule is triggered when a packet matches source and destination IP addresses in the rule header, and then it has a parenthetical, which indicates that the rest is not essential, and the language the board uses confirms that, and any criteria in the rule options section, so recognizing that that's not required for there to be a rule. We find that SourceFire makes a determination that the packet satisfies the rule based on one or more of these source and destination IP addresses. And so later on in the same page, they say that when SourceFire rule contains conditions, in addition to IP addresses in the rule header, the operator is applied when the packet matches all the conditions. But again, the when it includes something other than IP addresses reflects that they understood that an additional criteria beyond IP addresses is not required. But this is where I have concern that the board didn't carefully tell us what their construction was. They say at, what, at 18, they'll get to it to the extent necessary, and then they sort of weave a little bit of it in to their discussion of SourceFire. But I don't see it here, but help me if I'm missing it, where they say, we understand what the dispute is about the claim scope. We're siding with the petitioner, and here's why. And even if we sided with the patent owner, we still would come to the same obviousness conclusion. Are you saying we can find all that here on 32? Yes, Your Honor. But in terms of the claim construction point, it's immediately above the language that we were discussing. Because that's where they characterize patent owner's argument that it requires that, it says, patent owner argues that even if the rules are triggered based on criteria in the rule header, this does not determine whether the specified operators in those intrusion rules are performed in reaction to. That's the claim construction argument that they had meant, that in response to, or responsive to means in reaction to. And they thought that in reaction to connoted some kind of immediacy. They said, in reaction to, responsive to, a packet matching specified IP addresses in the rule header. And they said, we disagree. We disagree with that claim construction argument. Rather than requiring that the operator be applied responsive to a packet matching IP addresses, it doesn't go from operator to IP addresses. Rather, the claim language requires applying the operator responsive to a determination that the rule is satisfied. And that's exactly what the claim language says in 1C1. It says, responsive to a determination by the packet filtering device, that the first packet satisfies a first packet filtering rule. So responsive to is tied to a determination that the rule is satisfied. What I'm hearing you saying is that one sentence, the rather than requiring, is the board's claim construction analysis. And I guess it's just so clear and unambiguous that we don't have to go through the specification. We don't have to go through the other claim language. We don't have to go through the prosecution history. Just trust us, this is the right construction. I think that what they are saying is that Centripetal is trying to tie responsive to, directly to the network threat indicators. And that's not how the claim is written. And that is absolutely correct. That is their construction. It is a correct construction. But I also maintain that the board did not feel it was necessary to construe, because SourceFire discloses that the rule would be satisfied, in some instances, based solely on the IP headers. And that's clear in the language we were discussing previously, where they reflect twice that any additional criteria in the options is optional. Where they say any criteria in parens, and then when they later say when there is a criteria in addition to IP addresses in the header. So twice the board indicates that that's optional. So SourceFire, and of course this is an obviousness challenge, not anticipation. And so it would be enough that it simply discloses it. It doesn't have to say that explicitly. And Dr. Lee, in his deposition testimony, said exactly that. This is at appendix 9678. He said, it doesn't say that a condition has to include a set of keywords or arguments. That's the optional element. SourceFire says that these are in the option part. Why they are called option part is optional. This definition doesn't say conditions has to include keywords and arguments. So there is substantial evidence to support the argument. And in fact, elsewhere, this is at A2136. There is a diagram that shows the rule header. And then there is a place to click add options, if you want to add options. It demonstrates that. And then on A2138, SourceFire says when adding keywords and arguments. It doesn't say you must add. It just says when you add them, then it has this effect. So there is substantial evidence for the finding that the options part is optional, as Dr. Lee said. But also, it's clear that they did construe responsive to as being tied to the determination that the rule was satisfied. Not directly to the IP addresses. Can you give us your view on the sentence at A61. This arises with the second patent IPR, the 126. The one I was discussing with Mr. Hanna. As such, we acknowledge the effect of the responsive to language in the challenged claims. And consider whether the grounds of unpatentability satisfy that requirement below. What does that mean? I think it has the same meaning as what they said in the 028. Where they said we are going to address this as necessary in our discussion below. There is, at page A78 to A79, the very same discussion that patent owners saying responsive to means in reaction to. And that's fine enough. It can mean in reaction to. But what the claim says is it's in reaction to the rule being satisfied. I think I'm looking at the right sentence at the bottom of A62. The as such sentence. Although we acknowledge the disclosure of the specification, which I think is describing the disclosures in which, in fact, there isn't anything, any other argument, variable, contributor to the decision. We're not persuaded that it teaches or suggests that the generation. And then it says does not preclude. Should that say precludes? It's just saying it's not limited to that. It's not limited to that. It's an embodiment, but it's not a limitation. Yeah, I mean, it's possible that that's just essentially a typo. We're not persuaded that it teaches or suggests that the generation does not preclude human input. So it's that it doesn't preclude, i.e., it is not impermissible. It doesn't say only. It doesn't preclude that you would also have another. There are two nots in the sentence. I think one of them doesn't belong. Quite possibly, Your Honor. I think the meaning is clear. They do not believe that the specification precludes another criteria. But, again, even if it did, the Board made findings of fact with respect to what SourceFlyer discloses, that SourceFlyer discloses that the rule could be triggered on the basis of the IP header alone. And, again, we argued collateral estoppel, although the Board did not apply it. Counselor, your time has expired, so I want to briefly conclude your thought. I will just, with respect to the collateral estoppel, this Court, in affirming the Board's finding with respect to the 722 patent, said it affirmed the Board's finding that SourceFlyer teaches filtering packets based on the network threat indicators as required by the claims. That is a finding of fact with respect to what SourceFlyer determined, and it was necessary for the findings in that case. So that finding of fact with respect to SourceFlyer's teaching stops them from disputing it now. Thank you. Thank you, Counselor. Mr. Hanley, you can take your full three minutes. Okay, thank you very much. I appreciate that. Judge Starr, the citations to the patent owner's response was referenced on Appendix 18, which is the 028 Final Written Decision. It specifically references patent owner response pages 26 through 27, which is Appendix 537 to 538. There you'll find the response of two constructions and the argument surrounding that, which is consistent with what I've been arguing today. Thank you. Judge Strano, you asked me early on, and I was trying to think about this when I was sitting down, you said if the equation was if X and Y. That was the hypothetical you gave me. And so what I wrote down, just kind of in my own pseudocode, is respectfully that's the wrong equation. The equation for this patent is if X, apply rule Y. And then rule Y will trigger the action. Right? That's what source fire does. Source fire says if X, apply rule Y. It's not if X and Y. And that's the issue, is that if you don't have, if you're not basing it, source fire does not base it on the network threat indicators in order to perform the action. Now counsel kept saying that there's this optional field and whatnot. Well, that's referring to one line of a deposition in which Dr. Lee, on cross-examination, said the word optional. If you look at the evidence, if you look at Exhibit 2040, or if you look at Appendix 2040 or 2035, there you will see that the reference, every time it talks about the IP address, is whether you're going to apply rules at all. So, I mean, if I look at 2035, I'll just read it for the record, it says the IPS... 2045. This is 2035. 2035 is the beginning of the Chapter 20, which talks about these intrusion rules. This is what they rely upon throughout their petition. It says IPS compares packets against the conditions specified in each rule. And if the packet matches all the conditions specified in a rule, the rule triggers. Those conditions, that's not the IP address. That's not the IP address that we're talking about. And that's clear on 2040, Appendix 2040. If you go a couple more pages, it says rule headers. We're talking about the rule headers, not the rules themselves. The rule headers include the source and destination IP addresses of traffic that the rule inspects. You can restrict packet inspection to the packet originating from specific IP addresses or those destined to a specific IP addresses. This reduces the amount of packet inspection the system must perform. That's what these rule headers are doing. It's not causing actions to be triggered based on conditions in a rule. This is merely reducing the amount of packet inspection that can occur at all. And so this is why it led to these inconsistent results between the 126 and the 028. And so I think, and Judge Stark, you were asking questions about this. This is on Appendix 79, where the board in this case, they actually said, we can acknowledge that the filtering processes in SourceFire might not be identical to the process disclosed in the 126 patent. So your red light is on, and that's one thing we're responsive to. You gave me some more time because you said the full three minutes, but okay. Well, you were in your red time.  You were beyond that. Oh, I'm sorry.  Thank you, Your Honor. The case is submitted. All right. Appreciate it.